IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JAMES LAW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | C.A. NO. C-06-204 |
| | § | |
| ROLANDO GARCIA, | § | |
| | § | |
| Defendant. | § | |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On this day came on to be considered Defendant's "Motion for Summary Judgment" (D.E. 16). For the reasons discussed below, Defendant's motion is DENIED.

## I.   JURISDICTION

The Court has federal question jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## II.   BACKGROUND

On May 12, 2006, Plaintiff James Law ("Plaintiff") filed suit in this Court, alleging that Defendant Rolando Garcia ("Defendant") used excessive force against him in violation of federal and state law and caused him injuries. In particular, Plaintiff asserted three claims against Defendant: (1) a § 1983 claim for excessive force in violation of the Eighth Amendment; (2) assault and battery; and (3) intentional infliction of emotional distress. On February 15, 2007, the Defendant filed a "Motion for Summary Judgment" against Plaintiff (D.E. 16), along with supporting

exhibits (D.E. 17).  On March 8, 2007, Plaintiff filed a Response to Defendant's motion.  (D.E. 18.)  The following facts are not in dispute:

In May 2004, Plaintiff was an inmate in the custody of the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ") and incarcerated in the Glossbrenner Unit[1] in San Diego, Texas.  (Def's Mot. for Summ. Judg. ("MSJ") Undisputed Facts at ¶ 2; see Pl.'s Exhibits ("PEX") A-B.)  At that time, Defendant was a correctional officer employed by TDCJ at the Glossbrenner Unit.  (MSJ Undisputed Facts at ¶ 1; PEX A-B.)  On the evening of May 20, 2004, while Plaintiff was standing in line at the prison cafeteria hall, Plaintiff and Defendant became involved in a verbal altercation, which ended with Plaintiff being placed in restraints and escorted to a prison cell.  (PEX A at 10-15.)  Later that same evening, correctional officers brought Plaintiff into a prison "line office," at which time Lieutenant J. Gongora ("Lt. Gongora") informed Plaintiff that he would be "held accountable" for using vulgar language and allegedly-refusing to obey orders during the altercation with Defendant earlier in the day.  (PEX A at 12.) While Lt. Gongora was speaking with Plaintiff, Defendant walked into the office, and became involved in a physical altercation with Plaintiff.  (PEX A at 10-12, 14; B at 6.)  During the altercation, Defendant struck Plaintiff at least once.  (PEX A at 11; B at 6.)

---

[1] The Glossbrenner Unit is a substance abuse felony punishment facility.

-2-

Shortly thereafter, other prison officers and medical personnel arrived on the scene.  (PEX A at 12-13.)  Plaintiff was taken to the medical department, where he was examined and given treatment for his injuries.  (PEX A at 13.)

## III.  DISCUSSION

### A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are "material."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of [the record] which [he] believes demonstrate the absence of a genuine issue of material fact."  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has carried his burden, the

nonmovant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that the nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue).  The nonmovant's burden is not satisfied by conclusory allegations, unsubstantiated assertions, or some metaphysical doubt as to the material facts. Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").  Similarly, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for [that party]." Doe on Behalf of Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998).

When the parties have submitted evidence of conflicting facts, however, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis, 61 F.3d at 315.  Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399

-4-

(5th Cir. 2000).  "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues." Byrd v. Roadway Exp., Inc., 687 F.2d 85, 87 (5th Cir. 1982); Aubrey v. Sch. Bd. of Lafayette, 92 F.3d 316, 318 (5th Cir. 1996).

**B.   Section 1983 Claim**

Plaintiff claims that Defendant used excessive force against him in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

**1.   Qualified Immunity**

Defendant Garcia may be shielded from liability under § 1983 if his actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." See, e.g., Hope v. Pelzer, 536 U.S. 730, 739 (2002); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity operates to ensure that before officials are subjected to suit, they are on notice that their conduct is unlawful. See, e.g., Saucier v. Katz, 533 U.S. 194, 206 (2001). The qualified immunity determination involves a two-step analysis. Flores v. City of Palacios, 381 F.3d 391, 395 (5th Cir. 2004). First, a court must determine whether a "constitutional right would have been violated on the facts alleged." Id. (citing Saucier, 533 U.S. at 200). Second, the court must determine whether "the defendant's actions

-5-

violated clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Id</u>. (citing <u>Hope</u>, 536 U.S. at 739). If, viewing the evidence in the light most favorable to the plaintiff, "reasonable public officials could differ on the lawfulness of the defendant's actions, then that defendant is entitled to qualified immunity." <u>Haggerty v. Texas Southern Univ.</u>, 391 F.3d 653, 655 (5th Cir. 2004); <u>see also</u> <u>Southard v. Texas Bd. of Criminal Justice</u>, 114 F.3d 539, 550 (5th Cir. 1997).

### 2.   § 1983: Eighth Amendment Excessive Force

#### a.   Step 1: Violation of a Constitutional Right

The Eighth Amendment governs an inmate's claim that prison officials used excessive force against him. <u>See, e.g.,</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992). The Supreme Court has held:

> whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in <u>Whitley</u>: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

<u>Id.</u> (citing <u>Whitley v. Albers</u>, 475 U.S. 312, 327 (1986)). In determining whether a use of force was employed maliciously and sadistically to cause harm, a court should consider all relevant factors, including: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. <u>See, e.g.,</u> <u>Gomez v.</u>

-6-

<u>Chandler</u>, 163 F.3d 921, 923 (5th Cir. 1999); <u>Baldwin v. Stalder</u>, 137 F.3d 836, 839 (5th Cir. 1998); <u>Hudson v. McMillian</u>, 962 F.2d 522, 523 (5th Cir. 1992).  "[T]hese identified factors are not exclusive," however, and "each case must be judged on its own facts." <u>Baldwin</u>, 137 F.3d at 839.

In this case, Plaintiff has evidence from which a jury could conclude that Defendant used force maliciously and sadistically against him, for the very purpose of causing him harm.  For example, Plaintiff's evidence shows that: (1) there was no disciplinary or correctional "need" for the force that Defendant used against him, and (2) the correctional officers could not have reasonably perceived the Plaintiff to be a threat.  In particular, Plaintiff's evidence shows that, at the time of the incident, he was alone in a prison office with three correctional officers: the Defendant, Lt. Gongora, and Sgt. Funderburg.  (PEX A at 12-15.)  A jury could find that Plaintiff did not provoke Defendant in any way, but rather that Defendant attacked him merely because he "smiled" or "smirked" at Defendant.  (<u>See</u>, <u>e.g.</u>, PEX A at 1, 10-11; B at 3, 7, 24.)  As Defendant himself explained after the incident:

> At approximately 1915 hrs, I walked into the Line Office to turn in my count, when said Offender looked at me with a smirk on his face and laughed.  At this time I struck said Offender with my right closed fist to Offender's left side of his head.  I then stood over him and struck Offender a couple of more times with same hand and to the same place.

(PEX A at 11.)  Further, Plaintiff has evidence showing that a TDCJ investigation after the incident concluded that "[t]he offender was

-7-

not a threat" at the time of the incident and "the offender never
fought back" during the altercation.  (See PEX B at 25.)  Likewise,
TDCJ treated the altercation between Defendant and Plaintiff as a
"Non-Provoked" use of force.  (See, e.g., PEX A 1, 2, 6; B at 1,
30-31.)  In sum, viewing the evidence in the light most favorable
to the Plaintiff, a jury could conclude that Defendant's use of
force was unnecessary and unjustified.

    Moreover, there is evidence suggesting that Defendant's use of
force was significant.  For example, Defendant struck Plaintiff
several times in the head with his closed fist[2] until Plaintiff
fell to the floor, hitting his head on a filing cabinet in the
process.  (PEX A at 1-2, 10.)  One TDCJ report explained:

> Officer Garcia struck Offender Law about the face and
> head several times, knocking him off his feet.  Offender
> Law hit his head on the filing cabinet as he fell to the
> ground.

(PEX A at 9-10.)  Plaintiff's evidence also shows that, after
Defendant knocked him to the floor, Defendant climbed on top of him
and "[t]wo staff members had to physically remove Officer Garcia
off of the offender."  (PEX B at 25; see also PEX A 12-14.)  One
officer present at the scene stated that, as they attempted to
physically remove Defendant from Plaintiff, Defendant hit Plaintiff
with his right hand at least three additional times.  (See PEX A at
14.)  Therefore, viewing the evidence in the light most favorable

---

[2] See, e.g., PEX A at 11 (Defendant "struck said Offender
with [his] right closed fist"); PEX B at 4 (Defendant "struck
Offender Law with his fist").

to the Plaintiff, a jury could conclude that Defendant used significant force against Plaintiff, and made no effort to temper the severity of the force. Weighing these factors together with Plaintiff's resulting injuries,[3] a jury could find that Defendant used force maliciously and sadistically for the very purpose of causing harm to Plaintiff. See, e.g., Brown v. Lippard, 472 F.3d 384, 386 (5th Cir. 2006) (officer was not entitled to qualified immunity where there was evidence he struck a prisoner "several times in his back, head and shoulders" without provocation); Gomez v. Chandler, 163 F.3d 921, 922 (5th Cir. 1999) (reversing summary judgment in favor of prison officers where there was evidence that the officers knocked the inmate down and punched and kicked his head repeatedly).

Despite the evidence described above, Defendant contends that Plaintiff cannot maintain an Eighth Amendment claim in this case because "he has not shown that he suffered more than a de minimis injury as a result of this alleged use of force." (MSJ at 6.) Defendant's argument is unpersuasive.[4] The Fifth Circuit has held

---

[3] The extent of Plaintiff's injuries is discussed in greater detail, below.

[4] This Court notes that the Fifth Circuit has recently cast doubt on Defendant's argument that a plaintiff must suffer more than de minimis injuries in order to fall within the ambit of the Eighth Amendment. In Brown v. Lippard, 472 F.3d 384 (5th Cir. 2006), the Fifth Circuit addressed a defendant's argument that the plaintiff's injuries were "not severe enough to support an excessive force claim." Id. at 386. The Brown court cautioned that the Fifth Circuit "has never directly held that injuries must reach beyond some arbitrary threshold to satisfy an

-9-

on several occasions that "*some* physical injury is an indispensable element of an Eighth Amendment excessive force claim." Gomez, 163 F.3d at 923 (citing Knight v. Caldwell, 970 F.2d 1430, 1432-33 (5th Cir. 1992); Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993)). Both the Fifth Circuit and Supreme Court have made clear, however, that "there is no categorical requirement that the physical injury be significant, serious, or more than minor." Id. at 924; see also Knight, 970 F.2d at 1432 (stating that the Eighth Amendment requires proof of some injury, "albeit significant or insignificant"). Rather, courts should look to the seriousness of the injury as only one factor, among many, useful to determine whether the use of force evinces the wantonness and maliciousness needed to violate the constitution. See, e.g., Brown, 472 F.3d at 386-87; Hudson, 503 U.S. at 7 ("the extent of injury suffered by an

---

excessive force claim" under the Eighth Amendment. Id. The court explained:

> The Supreme Court in Hudson was concerned with a *de minimis* use of force showing, not a *de minimis* injury. Nonetheless, this Circuit has on occasion referred to *de minimis* injuries, although only with the caveat that when the force is "repugnant to the conscience of mankind" the gravity of the injury *may be* irrelevant.

Id. at 386 n.1 (citing Gomez v. Chandler, 163 F.3d 921, 924 n.4 (5th Cir. 1999) and Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)). Therefore, the Brown court recognized that there is some ambiguity in the case law as to whether a plaintiff must prove more than *de minimis* injuries in order to state an excessive force claim. Ultimately, however, the Brown court declined to resolve this ambiguity, because the plaintiff suffered more than a *de minimis* injury in that case.

inmate is one factor" relevant to determining whether the force used was wanton and unnecessary).  Only where the injury and the corresponding use of force are extremely minor, such as a prison guard twisting an inmate's ear and causing a bruise, will courts exclude a plaintiff from constitutional protection.  See Brown, 472 F.3d at 387; Siglar, 112 F.3d at 193 (bruise caused by having ear twisted insufficient for Eighth Amendment purposes).  As the Fifth Circuit explained in the Brown case, however, "[t]he attack and injuries described by [Plaintiff in this case] cannot be likened to a twisted ear."  Brown, 472 F.3d at 387.

In this case, Plaintiff has evidence showing that his injuries were not so minor as to be excluded from constitutional protection. For example, when two officers entered the office after the attack, they observed Plaintiff "laying on the floor with blood coming out from . . . the back of his head."  (PEX A at 18, 19.)   Prison personnel also found "smeared blood" on the floor of the office as well as Plaintiff's arms.  (PEX A at 21.)   After the attack, correctional officers observed that the Plaintiff "appeared dizzy and [was] unable to get up."  (PEX A at 13.)   Two officers, therefore, picked Plaintiff up from the floor and placed him in a wheelchair.  (PEX A at 13, 20, 31.)  Plaintiff was then escorted to the emergency room in the medical department for examination.  (See PEX A at 21.)  Plaintiff's evidence shows that, upon reaching the medical department, he was placed on a stretcher or gurney, and medical personnel proceeded to examine him and clean his injuries.

-11-

(PEX A at 20-21.)   Medical personnel determined he had several
small lacerations to the right side of his head.  (PEX A at 25, 28-
29; PEX B at 26.)  Other medical records also describe Plaintiff as
having "contusions," "abrasions," or "bruises" to his head area.
(PEX A at 27; Def.'s Ex. ("DEX") A at 13, 34, 43; <u>see also</u> MSJ
Undisputed Facts at ¶ 4.)  After his initial examination:

> [Plaintiff] was brought back to Medical after showering.
> Vital signs were done and [Plaintiff] was assisted back
> [into the] stretcher [while medical personnel] applied
> ice and dry dressing to [his] head area. [Plaintiff] was
> alert and oriented . . . and laid on stretcher for
> approximately 5-10 minutes. [Plaintiff] was escorted by
> officers back to [the] Line Office with [an] ice pack.
> [Nurse Garcia] instructed Officer Trigo to tell [the]
> Line Office officers to monitor [Plaintiff] every 30
> minutes and that [Plaintiff] should come back to Medical
> in [the morning] for follow-up.

(PEX A at 21.)   Finally, there is also evidence showing that
Plaintiff was, in fact, seen by TDCJ medical personnel the
following morning (May 21, 2004) at which time, he was experiencing
dizziness or "whooziness."  (DEX A at 34-36, 43.)

Considering these facts, the Court cannot say as a matter of
law that Plaintiff's injuries were so minor as to be excluded from
constitutional protection.  Unlike the mere "bruised ear" found
insufficient in <u>Siglar</u>, Plaintiff has presented evidence that he
was struck repeatedly with a closed fist with enough force to cause
lacerations and contusions to his head that required (1) medical
attention immediately after the incident, and (2) a follow-up
examination the next day.  This case is more analogous to the Fifth
Circuit case of <u>Brown v. Lippard</u>.  In that case, a correctional

-12-

officer struck an inmate several times on his back, head, and shoulders. As a result, the inmate went to the medical center where the "nurse noted one-centimeter abrasions on both his left knee and left shoulder, pain in his right knee, and tenderness around his left thumb." Id. at 386. The defendant contended that these injuries were insufficient, citing the Siglar case, but the Fifth Circuit disagreed, holding:

> A more analogous case is Gomez v. Chandler. After being knocked down and punched repeatedly, the prisoner suffered "cuts, scrapes, contusions to the face, head, and body." Not only are the injuries sustained here more akin to those in Gomez, but the alleged attack was similarly not applied in a good-faith effort to maintain or restore discipline, rather maliciously and sadistically to cause harm.
>
> [The defendant] repeatedly attempts to minimize [the plaintiff's] injuries as requiring no more than swabbing with Betadine. But the Supreme Court has put to rest a seriously misguided view that pain inflicted by an excessive use of force is actionable under the Eighth Amendment only when coupled with significant injury, e.g., injury that requires medical attention or leaves permanent marks. While this particular injury did require medical attention, [the defendant] apparently prefers a pre-Hudson standard requiring the complainant to receive serious medical attention. There is no basis for that position.

Brown, 472 F.3d at 387 (internal citations omitted) (citing Gomez, 163 F.3d at 922-23; Hudson, 503 U.S. at 13)). The reasoning of the Brown case applies equally here and Plaintiff's § 1983 claim cannot be dismissed as a matter of law.

### b.   Step 2: Clearly Established Right

The second step in the qualified immunity analysis requires

the Court to consider whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Flores</u>, 381 F.3d at 395.  For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).  A defendant is entitled to qualified immunity "so long as [his] actions could reasonably have been thought consistent with the rights [he is] alleged to have violated." <u>Fontenot v. Cormier</u>, 56 F.3d 669, 673 (5th Cir. 1995). The central concern of this step in the analysis is that of "fair warning" to the public official.  <u>Kinney v. Weaver</u>, 367 F.3d 337, 350 (5th Cir. 2004); <u>see also</u> <u>Pelzer</u>, 536 U.S. at 740.

At the time of the events giving rise to this case, the Supreme Court and the Fifth Circuit had made clear "that a correctional officer's use of excessive physical force against a prisoner may in an appropriate setting constitute cruel and unusual punishment of the prisoner, contrary to the Eighth Amendment, even though the prisoner does not suffer either significant injury or serious injury." <u>Gomez</u>, 163 F.3d at 923; <u>Hudson</u>, 503 U.S. at 7. The <u>Gomez</u> case, in particular, made clear that an officer who causes "cuts, scrapes, contusions to the face, head, and body" of an inmate by repeatedly striking him without provocation, violates the constitution.  <u>Gomez</u>, 163 F.3d at 923-24.  That is especially

-14-

true where, as here, the inmate actually receives medical attention for his injuries.  Id.  Therefore, Defendant had "fair warning" that his alleged conduct is unlawful, and no reasonable officer could have thought such conduct to be consistent with Plaintiff's rights.  Accordingly, Plaintiff has met his  burden of overcoming qualified immunity on summary judgment and Defendant's motion for summary judgment on that ground is DENIED.

**C.   State Law Claims**

Plaintiff claims that Defendant liable for assault and battery as well as intentional infliction of emotion distress.

**1.   Official Immunity**

Defendant argues that he is entitled to official immunity from Plaintiff's state law claims.[5]  Under Texas law, "[o]fficial immunity is an affirmative defense that protects government employees from personal liability." Vela v. Rocha, 52 S.W.3d 398, 403 (Tex. App.--Corpus Christi 2001); see also City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994).  "Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority."

---

[5] Defendant also contends that, to the extent he is sued in his official capacity, he is entitled to Eleventh Amendment Immunity from suit.  (MSJ at 8.)  As the Plaintiff's attorney explained at the Initial Pretrial Conference, however, Plaintiff is suing Defendant only in his individual capacity, not in his official capacity.  (June 27, 2006, Hrg. at 2:16:25 - 2:16:50.)

-15-

<u>Chambers</u>, 883 S.W.2d at 653; <u>see</u> <u>also</u> <u>Cantu v. Rocha</u>, 77 F.3d 795, 808 (5th Cir. 1996).  In determining whether a government official acted with "good faith" the court must "ask whether a reasonably prudent official could have believed his or her conduct was consistent with the plaintiff['s] rights." <u>Hernandez ex rel.</u> <u>Hernandez v. Texas Dept. of Protective & Regulatory Servs.</u>, 380 F.3d 872, 885 (5th Cir. 2004) (citing <u>Cantu</u>, 77 F.3d at 809).  In other words, to "show good faith, a government official must show that his acts were within the realm of what a reasonably prudent government official could have believed was appropriate at the time in question." <u>Vela</u>, 52 S.W.3d at 404.  Because official immunity is an affirmative defense for which the Defendant bears the burden of proof, the defendant on summary judgment must come forward with evidence that establishes "beyond peradventure *all* the essential elements of the . . . defense to warrant judgment in [his] favor." <u>Fontenot v. UpJohn Co.</u>, 780 F.2d 1190, 1194 (5th Cir. 1986); <u>see</u> <u>also</u> <u>Baylor College of Medicine v. Hernandez</u>, 208 S.W.3d 4, 11 (Tex. App.--Houston 2006).

In this case, Defendant has failed to establish that he is entitled to the defense of official immunity as a matter of law. As noted in the discussion of Plaintiff's excessive force claim, above, no reasonable public official could have believed that repeatedly punching an inmate without provocation was appropriate or consistent with the Plaintiff's rights.  Thus, Defendant's

-16-

Motion for Summary Judgment based on official immunity is DENIED.[6]

## 2.   Intentional Infliction of Emotional Distress

Finally, Defendant contends that he is entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim.  In order to establish this claim, a plaintiff must prove: "(1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe." Mattix-Hill v. Reck, 923 S.W.2d 596, 597 (Tex. 1996); Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993).  Outrageous conduct should be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Twyman, 855 S.W.2d at 621.  In analyzing whether certain conduct is extreme and outrageous, "courts consider the context and the relationship between the parties." GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 612 (Tex. 1999).  "The

---

[6] Defendant also contends that he is entitled to the affirmative defense contained in Texas Penal Code § 9.53.  That section provides that an employee of a correctional facility is justified in using force against an inmate to the extent that she reasonably believes such force is necessary to maintain security, or protect herself or others.  As plaintiff correctly notes, however, § 9.53 provides a defense to *criminal* prosecution and liability, see Texas Penal Code § 9.02, and in any case, Plaintiff has presented sufficient evidence to raise a genuine issue of material fact regarding whether the Defendant had a "reasonable belief" that the use of force was necessary.

extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." Id. (quoting Restatement (Second) of Torts § 46 cmt. (e)).

The Texas Supreme Court has expressed reservations in finding a single or isolated instance of malicious conduct sufficient to meet the extreme and outrageous standard:

> Occasional malicious and abusive incidents should not be condoned, but must often be tolerated in our society. But once conduct . . . becomes a regular pattern of behavior and continues despite the victim's objection and attempts to remedy the situation, it can no longer be tolerated. It is the severity and regularity of . . . abusive and threatening conduct that brings [it] into the realm of extreme and outrageous conduct. Conduct such as being regularly assaulted, intimidated, and threatened . . . [should not] be accepted in a civilized society.

GTE Southwest, 998 S.W.2d at 617. However, excessive law enforcement conduct may, standing alone, be extreme and outrageous. See, e.g., Kersh v. Derozier, 851 F.2d 1509, 1514 (5th Cir. 1988) (jury could find extreme and outrageous conduct where police engaged in a false and pretextual arrest motivated the officer's vindictiveness toward the plaintiff); Hutchison v. Brookshire Bros., Ltd., 205 F.Supp.2d 629, 642 (E.D. Tex. 2002) (jury could find extreme and outrageous conduct where an officer threatened plaintiff with arrest if he did not siphon ten gallons of gasoline from his car).

Here, as noted earlier, Plaintiff has presented evidence that

-18-

Defendant struck him several times without provocation and continued to strike the Plaintiff on the floor until he was physically restrained by fellow officers. Furthermore, Defendant's attack on Plaintiff came while Defendant occupied a position of trust and had authority over Plaintiff and others. See GTE Southwest, 998 S.W.2d at 612. Viewing this evidence in the light most favorable to Plaintiff, a jury could find that Defendant's conduct was extreme and outrageous. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's intentional infliction of emotion distress claim is DENIED.

## IV.   CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (D.E. 16) is DENIED.

SIGNED and ENTERED this 23rd day of March, 2007.

_____
Janis Graham Jack
United States District Judge

-19-